# Exhibit K

```
 1                                              PAGES 1 - 233

 2                                              EXHS. 1 - 22

 3

 4              UNITED STATES DISTRICT COURT

 5         FOR THE NORTHERN DISTRICT OF NEW YORK

 6            Civil Action No. 8:10-CV-1516

 7

 8    * * * * * * * * * * * * * * * * * *
      Argonaut Insurance Company and      *
 9    Great American Insurance Company as *
      subrogees of the Town of Dannemora  *
10                                        *
      v.                                  *
11                                        *
      Samsung Heavy Industries Co. Ltd.   *
12    and Volvo Construction Equipment    *
      North America, Inc.                 *
13                                        *
      * * * * * * * * * * * * * * * * * *
14

15

16
                Deposition of Ronald E. Parsons
17                  Friday, May 11, 2012
                       Wright Group Inc.
18                     125 Stanphyl Road
              North Uxbridge, Massachusetts 01538
19

20

21
           ----------  J. Edward Varallo, RMR, CRR  ----------
22               Registered Professional Reporter
                         THE VARALLO GROUP
23          9 Hammond Street ~ Worcester, MA 01610
                508.753.9282 ~ Fax 508.753.9284
24                  www.TheVaralloGroup.com
```

```
 1   Present for Plaintiff Argonaut Insurance Company as
     subrogee of the Town of Dannemora:
 2       Matthew F. Noone, Esq.
         Cozen O'Connor
 3          The Atrium - 3rd Floor
            1900 Market Street
 4          Philadelphia, Pennsylvania 19103-3508
            215.665.2000 ~ Fax 215.665.2013
 5          mnoone@cozen.com

 6

 7
     Present (via telephone) for Plaintiff Great American
 8   Insurance Company as subrogee of the Town of
     Dannemora:
 9       Nelson E. Canter, Esq.
         Thomas Scappaticci, Jr., Esq.
10       Canter Law Firm
            123 Main Street - 9th Floor
11          White Plains, New York 10601
            914.948.3011 ~ Fax 914.948.3066
12          info@canterlawfirm.com

13

14   Present for Defendants Samsung Heavy Industries Co.
     Ltd. and Volvo Construction Equipment North America,
15   Inc.:
         Thomas D. Keleher, Esq.
16       Bond Schoeneck & King, PLLC
            One Lincoln Center
17          110 West Fayette Street
            Syracuse, New York 13202-1355
18          315.218.8000 ~ Fax 315.218.8100
            tkeleher@bsk.com
19

20

21

22

23

24
```

```
                      I N D E X


------------------------------------------------------------
DEPONENT                                              PAGE
------------------------------------------------------------


Ronald E. Parsons
   by Mr. Keleher..............................   6
   by Mr. Noone................................ 227



------------------------------------------------------------
PARSONS EXHIBITS          FOR IDENTIFICATION          PAGE
------------------------------------------------------------


1    Expert report of Ronald Parsons, Wright           34
     Group Inc.


2    Résumé of Ronald Parsons                          34


3    Résumé of Jack Wentzell                           35


4    Wright Group assignment sheet, headed WSI         40
     File No. 57793, Claim No. 48412


5    Layout drawing of Dannemora Highway               51
     Garage, handwritten at top "Tied into
     duplicate bldg."


6    Layout drawing of Dannemora Highway               51
     Garage, handwritten at top "100' x 50'"


7    Interviews conducted by Wright Group of           56
     Town of Dannemora employees
```

```
-----------------------------------------------------------
PARSONS EXHIBITS         FOR IDENTIFICATION        PAGE
-----------------------------------------------------------

7-A  Hand-drawn diagram done by Jack Wentzell        211
     from interview of Peter Barber on February 3,
     2010

8    Jan Kannally's handwritten interview notes      58
     of Town of Dannemora employees

9    Evidence Transmittal Documentation (three       68
     pages) listing all evidence removed from loss
     site by Wright Group on August 10-12, 2010

10   Invoices from Mid-State International           135
     Trucks, Inc., Northeast Battery, Spring
     Rebuilders, Inc., and Alpine Industrial Inc.

11   Photocopy of photograph of passenger side       136
     of the Ford exemplar test vehicle

12   Photograph of inside of battery box of the      136
     Ford exemplar test vehicle

13   Printout of SAE 821                             159

14   Printout of SAE 1614                            159

15   [exhibit not referenced]                        159

16   Photographs of Samsung exemplar vehicles        179

17   Closeup photograph of loss scene                193
```

Ronald E. Parsons
May 11, 2012                                                5

```
 1  ----------------------------------------------------------
    PARSONS EXHIBITS         FOR IDENTIFICATION       PAGE
 2  ----------------------------------------------------------

 3
    18  Closeup photograph of south end of garage    194
 4

 5  19  Closeup photograph of south end of garage    195

 6
    20  Photograph of loss scene showing vehicles    193
 7

 8  21  Expert report of Michael Miles               199

 9
    22  Photograph of Caterpillar 922 showing tie    230
10  wraps

11

12          (EXHIBITS RETAINED BY ATTORNEY KELEHER)

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1    -------------------------------------------------------
2                  P R O C E E D I N G S
3                       9:05 a.m.
4    -------------------------------------------------------
5                   RONALD E. PARSONS,
6         having been first duly sworn on oath,
7         was examined and testified as follows:
8                      EXAMINATION
9    BY MR. KELEHER:
10        Q.   Mr. Parsons, as you know, my name is Tom
11   Keleher and I represent the defendants in this case.
12   I am going to ask you some questions this morning
13   about your background and your investigation of the
14   fire at the town of Dannemora which occurred on
15   January 1st, 2010.  I know you've been through this
16   process many times, but if there's anything that you
17   don't understand, please let me know.  Make sure you
18   verbalize all your responses for the court reporter.
19   Okay?
20        A.   Yes.
21        Q.   State your full name for the record, if
22   you would.
23        A.   Ronald Parsons.
24        Q.   And what is your home address?
```

1  I word this -- they have been both electrical and
2  hydraulic-related.
3       Q.    What pieces of equipment were involved?
4       A.    Excavators, wheel loaders, bulldozers,
5  skid steers.  I think those are the major groups
6  that we have looked at.
7       Q.    And in terms of wheel loaders, can you
8  identify the model?
9       A.    I have looked at numerous, 992s, 980s.  I
10 think we have had some fires in some 966s.
11      Q.    Do you have any active cases against
12 Caterpillar at the present time?
13      A.    Not that I'm aware of, sir, no.
14      Q.    Now, you have investigated many fires, I
15 think you told me.  When you do a fire
16 investigation, do you personally have a certain
17 custom and practice that you follow in investigating
18 a fire?
19      A.    Typically we determine the origin first
20 and then we determine the cause.
21      Q.    But I'm talking about you yourself.  When
22 you go out to the scene, do you have a certain
23 custom and practice that you follow?
24      A.    Correct.  The Wright Group has a certain

```
 1   custom and practice that I follow also and it is
 2   ultimately the 921 guidelines.  So we determine the
 3   origin first, which consists of four areas, that is,
 4   witness statements, arc mapping, fire patterns, and
 5   fire dynamics.
 6        Q.    On those cases where you go to the site
 7   and do a site inspection, what is your custom and
 8   practice in conducting the site inspection?
 9        A.    Interviews, evaluating fire patterns,
10   looking at fuel packages so we can evaluate the fire
11   dynamics, and then looking at the electrical
12   architecture within the structure.
13        Q.    And how do you go about that when you are
14   on the site yourself?
15        A.    I would interview whatever persons have
16   the most knowledge.  I would then work through the
17   site to identify fuel packages, identify what
18   equipment is there, identify what components are
19   there.  I would also look at the electrical
20   architecture to see if I can document the electrical
21   events, if there are any in the electrical
22   architecture, and I would look at the dynamics, what
23   fuel packages and how they may play and affect the
24   fire growth.
```

1      A.     Yes, sir.
2      Q.     Witness statements, fire patterns, fire
3  dynamics, and arcing?
4      A.     Arc mapping, yes, sir.
5      Q.     Arc mapping.  Is that correct?
6      A.     Yes.
7      Q.     All right.  And in coming to your
8  conclusion in this case that the fire started at the
9  Samsung, you are relying upon three of those four
10 elements.  Is that correct?
11     A.     Correct.
12     Q.     The element that you are not relying upon
13 is the fire patterns?
14     A.     I'm relying on the fire patterns but to a
15 substantially lesser degree based on the total
16 destruction of the building.
17     Q.     Well, when you say the total destruction
18 of the building, is it your testimony -- Well, what
19 do you mean by that?
20     A.     The building flashed over.  All
21 combustibles in that garage had some level of
22 burning, and the fire burned basically unabated
23 because the fire department had a very difficult
24 time suppressing it because the exterior skin of the

```
 1   building is steel.
 2        Q.    But all of the combustibles were not fully
 3   consumed.  Isn't that true?
 4        A.    Correct.  That was my statement.  I said
 5   all of the combustibles had varying amounts of
 6   damage.
 7        Q.    And therefore some of the combustibles
 8   remained and were able to be observed for various
 9   fire patterns.  Isn't that true?
10        A.    That is correct.
11        Q.    But you do not base your opinion as to the
12   origin of the fire at the Samsung on the fire
13   patterns; you're relying upon the other three
14   elements?
15        A.    Primarily the other three elements.  I
16   give some weight to fire patterns, but one must use
17   caution in evaluating fire patterns when a building
18   has been fully involved.  There are multiple issues
19   to look at:  suppression, ventilation.  There's all
20   kinds of issues to deal with.
21        Q.    But one must use caution; one must not
22   eliminate the existence of fire patterns.  Isn't
23   that true?
24        A.    Well, I don't eliminate them, but they are
```

```
 1   typically very unreliable.
 2        Q.   Let's talk first about the witness
 3   statements from Mr. Barber.  He is the individual
 4   that you are relying upon?
 5        A.   Yes, sir.
 6        Q.   And what is it, what statements are you
 7   relying upon from Mr. Barber?
 8        A.   When Mr. Barber received the phone call
 9   from I believe the Kings, actually his wife received
10   the phone call, he lived four to five tenths of a
11   mile away from the garage.  As he approached the
12   garage, the lower portion of the door had failed.
13   There was no --
14        Q.   What do you mean by that?
15        A.   He could look into the garage, so the door
16   had failed.
17        Q.   And by "door had failed," the lower
18   portion of the door had failed, are you saying that
19   it had been consumed by the fire?
20        A.   I don't know.  It could have simply
21   dropped free from its hinges.  I don't know.  I have
22   no knowledge of that.  All I know is, the lower
23   portion of the door had failed; he could look into
24   the garage.  At the center of the garage he noted
```

```
 1       A.    Correct.
 2       Q.    But you would concede, would you not, that
 3  all combustibles had not been fully consumed?
 4       A.    All combustibles had been burned --
 5       Q.    To some extent, you mean?
 6       A.    Correct.  That would be a more accurate
 7  statement.
 8       Q.    So they had not been consumed in full?
 9       A.    No, that's correct.
10       Q.    You then go on to say in the next sentence
11  that "The fire patterns that remained after the full
12  involvement and collapse of the building are
13  unreliable for determining the origin of the fire."
14       A.    That's exactly correct.  If you were to
15  use fire patterns alone, they are unreliable.  If
16  you use all of the elements of origin, you can give
17  some weight to fire patterns.  But just to use fire
18  patterns, that origin analysis would be unreliable.
19       Q.    But in your report you're basically saying
20  that the fire patterns were totally unreliable and
21  you're not using them at all in arriving at your
22  determination of origin, are you?
23       A.    I give every element of origin weight.
24  The least weight is fire patterns.  And if one
```

```
 1  chooses to use just fire patterns, they are
 2  unreliable.
 3       Q.   On this particular page you seem to
 4  indicate that they are unreliable because all of the
 5  combustibles were consumed.  Isn't that what you're
 6  saying here?
 7       A.   No.  They are unreliable because the
 8  building had flashed over and had been completely
 9  involved in fire.
10       Q.   In any event, with respect to the
11  combustibles themselves, this is not a correct
12  statement on page 23, that they were consumed?
13       A.   That's correct.
14       Q.   Is that true?
15       A.   Yes.
16       Q.   So it is another error in your report?
17       A.   Oh, I don't consider that an error.  It's
18  just varying stages of being consumed.
19       Q.   That statement is not correct.  Isn't that
20  right, Mr. Parsons?
21       A.   No.  I guess I would take the position
22  that they were in various stages of being consumed
23  and this statement is accurate.  I could have
24  described it better, but it's accurate.
```